**No. 23-1995**

**UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

VIVINT, INC.,

*Appellant*,

*v.*

ADT, LLC,

*Appellee.*

On Appeal from the Patent Trial and Appeal Board of the United States Patent and Trademark Office, No. IPR2022-00071 (U.S. Patent No. 10,325,159)
Hon. Jameson Lee, Administrative Patent Judge

**BRIEF OF APPELLEE ADT, LLC**

David A. Simons
Bryan P. Collins
PILLSBURY WINTHROP SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Telephone: 703.770.7579
Facsimile: 703.770.7901
david.simons@pillsburylaw.com

*Attorneys for Appellee*

November 6, 2023

# EXEMPLARY CLAIM

**U.S. Patent No. 10,325,159 B1**

1. A method for entity detection by a processor, comprising:

detecting an entity entering a predefined area based at least in part on camera data, wherein the entity includes a human or an animal;

detecting a feature of the entity based at least in part on the camera data;

comparing the detected feature to one or more predefined features stored in a database;

matching the detected feature to one or more of the predefined features;

recognizing the entity based at least in part on an image of the entity captured by a camera and the detected feature;

determining an identifier assigned to the entity based at least in part on matching the detected feature to one or more of the predefined features, wherein the identifier was assigned to the entity at a previous time; and generating a notification indicating the entity based at least in part on determining the identifier.

# CERTIFICATE OF INTEREST

Counsel for Appellee ADT, LLC:

1.  The full name of every entity represented in the case by the undersigned counsel:

    ADT, LLC

2.  For each entity, the name of every real party in interest, if that entity is not the real party in interest:

    N/A

3.  For each entity, that entity's parent corporation(s) and every publicly held corporation that owns ten percent (10%) or more of its stock:

    ADT LLC is an indirect, wholly-owned subsidiary of ADT Inc., a publicly traded corporation with shares listed on the New York Stock Exchange [NYSE: ADT].

    ADT Inc. is a "controlled company," and the majority of its shares of common stock are beneficially owned by funds affiliated with or managed by Apollo Global Management, Inc., a publicly traded company [NYSE: APO]. No public company or entity owns 10% or more of the common stock of Apollo Global Management, LLC.

4.  The names of all law firms, partners, and associates that have not entered an appearance in the appeal, and (A) appeared for the entity in the lower tribunal; or (B) are expected to appear for the entity in this Court:

    None.

5.  Are there related cases that meet the criteria under Federal Circuit Rule 47.5:

    Yes. See Statement of Related Cases.

6. All information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases:

   N/A

Date: November 6, 2023                              /s/ *David A. Simons*
                                                         David A. Simons

# TABLE OF CONTENTS

Page

EXEMPLARY CLAIM ................................................................................i

CERTIFICATE OF INTEREST ............................................................... ii

STATEMENT OF RELATED CASES ...................................................1

INTRODUCTION ....................................................................................1

STATEMENT OF THE ISSUES...............................................................1

STATEMENT OF THE CASE.................................................................2

    I.    The '159 Patent .......................................................................2

    II.   The Prior Art ............................................................................5

         A.    Monroe ..........................................................................5

         B.    Jin .................................................................................6

    III.   The IPR Proceedings..............................................................7

SUMMARY OF THE ARGUMENT ....................................................12

ARGUMENT ........................................................................................13

    I.    The Board Properly Construed "Predefined Area"..............13

         C.    The Plain Meaning of "Predefined" is "Defined in Advance".14

         D.    The Board's Construction Does Not Render Claim Language Superfluous ...........................................16

         E.    Vivint's Proposed Construction Is Not Supported by the Record .................................................................17

    II.   Vivint's Construction of "Predefined Area" Fails to Distinguish the Prior Art..........................................................................28

CONCLUSION .....................................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Chamberlain Grp., Inc. v. One World Techs., Inc.*,
    944 F.3d 919 (Fed. Cir. 2019) .................................................................32, 33

*Dell Inc. v. Acceleron, LLC*,
    884 F.3d 1364 (Fed. Cir. 2018) ................................................................12, 33

*Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*,
    672 F.3d 1270 (Fed. Cir. 2012) ...................................................................19

*Driessen v. Best Buy Co., Inc.*, No. 2022-1907,
    2023 WL 2422441 (Fed. Cir. Mar. 9, 2023)................................................33

*IGT v. Bally Gaming Int'l, Inc.*,
    659 F.3d 1109 (Fed. Cir. 2011) ..............................................................14, 15

*In re Cuozzo Speed Technologies, LLC*,
    793 F.3d 1268 (Fed. Cir. 2015) ....................................................................28

*Nobel Biocare Servs. AG v. Instradent USA, Inc.*,
    903 F.3d 1365 (Fed. Cir. 2018) ....................................................................27

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) .........................................................14, 15, 26

*Renishaw PLC v. Marposs Societa' per Azioni*,
    158 F.3d 1243 (Fed. Cir. 1998) ..............................................................15, 22

*Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*,
    620 F.3d 1305 (Fed. Cir. 2010) ....................................................................25

*Superguide Corp. v. DirecTV Enters.*,
    358 F.3d 870 (Fed. Cir. 2004) ......................................................................24

*Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*,
    574 U.S. 318 (2015)......................................................................................15

*Thorner v. Sony Computer Entertainment America LLC*,
    669 F.3d 1362 (Fed. Cir. 2012) ....................................................................25

*Wasica Fin. GMBH v. Continental Auto. Sys., Inc.*,
  853 F.3d 1272 (Fed. Cir. 2017) ....................................................................14, 16

## STATEMENT OF RELATED CASES

The following case meets the criteria of Fed. Cir. R. 47.5(2): Vivint, Inc. v. ADT LLC a/k/a ADT LLC OF DELAWARE d/b/a ADT Security Services, a Delaware limited liability company, No. 2:21-cv-00115-JNP-DBP (D. Utah). In that case, which remains pending, Appellant Vivint, Inc. ("Vivint") alleges that a video doorbell system sold by Appellee ADT, LLC ("ADT") infringes the patent claims cancelled by the Final Written Decision that Appellant appeals in this proceeding. (*See* Appx00713-00729.)

## INTRODUCTION

This case presents a straightforward example of too-broadly drafted patent claims rendered invalid by uncited prior art. In its effort to avoid the prior art, the Vivint seeks to add an entirely new limitation, disclosed nowhere in specification, through a strained construction of "predefined area." The Board properly construed "predefined area" according to its plain and ordinary meaning, and this Court should affirm.

## STATEMENT OF THE ISSUES

1.      Did the Board err in construing "predefined area" according to its plain and ordinary meaning: "defined in advance"?

2.      Did the construction of "predefined area" Vivint proposed in its IPR briefing in fact distinguish the prior art?

3. Did the Board abuse its discretion in declining to allow Vivint to modify its claim construction of "predefined area" to further require user "interaction with a screen," because that proposed modification was first made at oral argument, rather than in its briefing?

## STATEMENT OF THE CASE

### I. The '159 Patent

The '159 Patent, entitled "Entity Detection," describes "a computer-implemented method for entity detection" that can be used "in relation to a home automation system." Appx00145-00146 at 1:46-47, 3:31-34. At a high level, the system detects a person (or animal) approaching a predefined area with a camera, detects features of the entity (e.g., facial features), recognizes the individual based on those detected features, and then provides a notification that the person has arrived.

The specification breaks the procedure into a series of "modules": a camera module, a classification module, a recognition module, an identifier module, and a notification module. Appx00147 at 5:51-57; Appx00138.

First, the "camera module" detects "an entity passing through a perimeter of a predefined area. The predefined area may include a shop, a restaurant, a building, an area of the building, a home, an area of the home, a parking lot, an animal cage, a wilderness area, and the like." Appx00147 at 5:58-63. Next, the "classification

module" classifies the entity as, e.g., "a vehicle, a human, an animal, animate objects, inanimate objects, etc." *Id.* at 5:63-6:2. The "recognition module" then detects "one or more features of the entity from the image of the entity," and uses those features "to distinguish one entity from another." *Id.* at 6:6-10. In one example, the features detected are facial features, and the recognition module uses facial recognition. *Id.* at 6:52-55.

The "identifier module" "may assign an identifier to the entity based on the type and the detected feature of the entity." *Id.* at 6:11-22. The identifier is stored in a database, together with other "entity data," such as "entity type" and "detected features" (e.g., facial recognition data). *Id.* at 5:24-39.

After the recognition module detects features of the entity (e.g., facial features), it compares those features to "predefined features" stored in the database to identify the entity (e.g., a specific person). Appx00148 at 7:3-11. Once the entity has been recognized by the recognition module, "a notification module may generate a notification indicating the recognized entity. For example, a person may want to know when a particular person arrives at a certain area." Appx00147 at 6:60-64.

The various modules are implemented with generic computer components. For example, Figures 1 and 8 depict a generic "server," "database," and "system memory." Appx00137, Appx00144. The "controller 800 suitable for implementing

the present system and methods," described in columns 9 and 10, includes generic, off-the-shelf components such as a fixed disk drive 875, a central processor 815, and a bus 805. Appx00149 at 9:27-10:30. The specification concludes by emphasizing that "each block diagram component, flowchart step, operation, and/or component described and/or illustrated herein may be implemented, individually and/or collectively, using a wide range of hardware, software, or firmware (or any combination thereof) configurations." *Id.* at 10:54-58.

Method claim 1, which is representative for the issues in this appeal, is reproduced below:

> 1. A method for entity detection by a processor, comprising:
>
> detecting an entity entering a predefined area based at least in part on camera data, wherein the entity includes a human or an animal;
>
> detecting a feature of the entity based at least in part on the camera data;
>
> comparing the detected feature to one or more predefined features stored in a database;
>
> matching the detected feature to one or more of the predefined features;
>
> recognizing the entity based at least in part on an image of the entity captured by a camera and the detected feature;
>
> determining an identifier assigned to the entity based at least in part on matching the detected feature to one or more of the predefined features, wherein the identifier was assigned to the entity at a previous time; and
>
> generating a notification indicating the entity based at least in part on determining the identifier.

## II.    The Prior Art

The Board cancelled the challenged claims on three separate grounds: (1) anticipation by U.S. Pub. No. 2004/0117638 A1 ("Monroe"); (2) obviousness over Monroe, alone or in view of U.S. Pat. No. 9,208,676 ("Fadell"); and (3) obviousness over Chinese Patent Application CN 102467800 ("Jin"), alone or in view of Monroe. Appx00078-00079. Below, the two primary references, Monroe and Jin, are briefly summarized.

### A.    Monroe

Monroe "is directed to the integration of facial recognition capability into a multimedia security system." Appx00624 at [0024]. As Monroe explains in his Summary of the Invention:

> In its simplest configuration, a camera views a scene of interest, and a processor analyzes the video signals produced by the camera. The processor performs the steps of:
>> Facial Separation, e.g., locating human faces within the viewed scene,
>> Facial Signature generation, e.g., deriving a unique identifying descriptor for the detected faces,
>> Database Creation, adding said descriptors and separated facial image to a comparison database,
>> Database Lookup, matching the captured descriptors with previously-captured faces or images containing faces or other relevant data, and
>> Generating alarms as appropriate.

*Id.* at [0025]-[0030]. Depending on the implementation, the alarm generated by Monroe's system can be sent by telephone, pager, email, or dispatch, and may

include "[r]elated information associated with the Facial Database record, such as the person's name, age, employer, criminal history, etc." Appx00626 at [0076]-[0078]; Appx00629-00630 at [0158]-[0171]. Monroe discloses a number of detailed applications for its facial recognition system, including home surveillance, airport security, identifying wanted persons, and school attendance. Appx00606-00636.

### B.  Jin

Jin discloses an "intrusion detection and alarm system" for an "area under surveillance." Appx00649 at [0010]. The system detects when a person has entered the surveillance area using camera data, performs facial recognition to assess whether the person is one of the "predefined users in a database," and when a predefined user is recognized, sends an SMS notification, together with an image. *Id.* at [0010]-[0012]:

> [T]he present invention provides an intrusion detection and alarm system comprising the following: an image acquisition module acquiring images from an area under surveillance; a central processing module comparing changes between every two images and capturing real-time images when said changes exceed a predetermined threshold; and an alarm module sending said real-time images to a predetermined user.
>
> Further, said system further comprises a data storage module and a facial recognition module. Said data storage module stores the facial features of predefined users in a database, and said central processing module captures real-time images and performs face detection on said real-time images.

When a face is detected in said real-time images, said facial recognition module performs facial recognition using the database of the facial features of predefined users.

Further, if the facial recognition performed by said facial recognition module is successful, said alarm device send said real-time image to a predetermined user….

## III.    The IPR Proceedings

The IPR Petition challenged claims 1, 2, 4, 8, 9, 10, and 12 of the '159.[1]

Appx00096-00097. With respect to the sole claim limitation at issue in this

appeal—"detecting an entity entering a predefined area based at least in part on

camera data"— ADT's IPR Petition argued as follows with respect to Monroe:

Monroe discloses that a camera views a "scene of interest." (Ex. 1005 at [0025]. *See also* [0157].) The camera detects motion when a person enters its field-of-view, generating the images for facial analysis:

An image server receives and stores still-frame images produced by the cameras for subsequent retrieval and analysis. These still-frame images are ordinarily produced only when the associated camera has detected motion within its field-of-view. The server may additionally be configured to store motion video streams upon detection of motion within its field-of-view….

(Ex. 1005 at [0044]. *See also* [0036].) A camera's field-of-view within the scene of interest is a "predefined area." Since "the associated camera" detects motion within the field-of-view, it detects

---

[1] The non-challenged claims (claims 3, 5-7, and 11) concern narrower embodiments implemented in stores and parking lots. These claims were not asserted against ADT in the related Utah Litigation, and therefore were not challenged in the IPR Petition. Appx00090-00091 at n.1.

an entity entering the predefined area, and that detection is based at least in part on camera data.

Appx00099.

With respect to Jin, the Petition similarly argued as follows:

Jin includes an image acquisition module 104, which "may be a light sensor or camera device." (Ex. 1007 at [0027].) The image acquisition module detects when an "intruding object" (an entity) enters the area under surveillance by continuously monitoring changes between successive images….

Appx00118.

In its Preliminary Response, Vivint argued that Monroe and Jin fail to disclose the "entering a predefined area" limitation, contending that a camera's entire field-of-view cannot constitute a "predefined area." Appx00823-00824, Appx00838-00842, Appx00845-849. In support, Vivint filed an expert declaration from James Olivier, who opined that there would be technical issues "associated with using a camera's entire field of view to perform entity detection," including issues with the "fringes" of the field of view and differences between a camera's aspect ratio and the aspect ratio of doorways. Appx00862-00863 at ¶ 24. While Vivint's Preliminary Response did not propose a construction for "predefined area," Dr. Olivier opined that "a POSA would understand a 'predefined area' to simply be an area that has been defined or delineated in advance, such as by using a predetermined perimeter as explained in the '159 patent." Appx00867 at ¶ 35.

In its Institution Decision, the Board rejected Vivint's contention that a camera's field-of-view could not be a "predefined area":

> We see nothing in the Specification of the '159 patent requiring the predefined area to be physically marked or delineated by something tangible along its perimeter. Monroe's disclosure that its camera views "a scene of interest" adequately supports Petitioner's treating a camera's field of view, when the camera is put in place to view that scene of interest, as a "predefined area." It is not necessary for the camera's field of view to coincide with or otherwise track the physical boundaries of a parking lot, a shop, a home, a property, a room, or a sub-section of any of the above, for it to constitute a "predefined area."

Appx00920. *See also* Appx00943-00944 (making similar findings with respect to Jin). The Board also rejected Dr. Olivier's contention that technical limitations along the "fringes" of a field-of-view was material:

> Also, that it may be more difficult to capture activities on the fringes of a camera's field of view does not mean activities cannot be captured on the fringes of the camera's field of view. In any event, the claim does not require a certain minimal level of performance. It is not necessary for a system in which the camera's field of view constitutes the predefined area to work equally as well as a system in which the predefined area is physically marked or delimited in some way other than by the camera's field of view.

Appx000920-00921.

In its Response, Vivint withdrew Dr. Olivier's expert declaration, (Appx00996 at n.1), and submitted a declaration from a different expert, Richard Kramer. Dr. Kramer offered a new proposed construction of "predefined area," opining that a person of skill in the art "would have understood a '*predefined area*'

in the '159 patent as meaning 'a physical area defined by a user configurable region of a camera's field of view having delineated boundaries, where the region within the boundary is a region of interest and any regions not within the boundary are regions of disinterest.'" Appx01107 (emphasis in original). Dr. Kramer based his proposed construction primarily on a feature found in a 2001 prior art system he helped develop at Ivex Corporation, which allowed a user to draw rectangles around portions of a camera's field of view, and only alert when motion was detected within those rectangles. Appx01090-01096, Appx01101-01107. This Ivex system and its rectangle-drawing functionality are not disclosed in the '159 Patent specification, nor are they cited or mentioned anywhere in the patent's file history.

In its Reply, ADT argued that "predefined area" should be afforded its plain and ordinary meaning—an area "defined in advance"—and that there was no basis in the claim language, specification, or file history to require that the predefined area be a user-configurable region of a camera's field of view. Appx01479-01487.

Vivint filed a Sur-Reply, largely pointing back to the claim construction arguments in its earlier Patent Owner's Response. Appx01623-01631.

At the IPR Hearing, the Board questioned whether Vivint's proposed construction of "predefined area" in fact distinguished the prior art. Specifically, the Board asked Vivint's counsel whether its construction in fact precluded a

camera's entire field-of-view from being a "predefined area." Vivint's counsel answered that it did not:

> JUDGE LEE: I'm looking at your definition with the definition for predefined area. And it seems to me even that does not exclude the entire field of view of a camera. Can you explain? Why even there you're not being specific.
>
> MR. FREEMAN: Well, it's intended to identify the -- well, let me answer your question this way. I think what you're probably getting at is, can you select an entire region of the field of view as your predefined area? Can you do that? Yes, you can do that….

Appx01737. Perhaps recognizing the problem this posed for its validity position, Vivint's counsel then attempted to alter its proposed construction for "predefined area" to further require that the user "interact with the screen." Appx01738 at lines 12-19; Appx01742 at lines 12-15. While Vivint now attempts to characterize that construction as a "clarified" one, (Appellant's Br. at 8), the record is clear it was new and belated because nothing in its previous construction mentioned user interaction with a screen.

In its Final Written Decision, the Board agreed that "predefined" simply means "defined in advance," and that the "entire field-of-view of a camera" can be a "predefined area." Appx00030-00031. The Board methodically addressed and rejected each of the claim construction arguments Vivint now advances in this appeal, as well as numerous other arguments that Vivint raised, but does not now appeal. Appx00001-00080.

The Board further found that the construction advanced in Vivint's briefing did not "preclude[e] a camera's entire field-of-view from being set up by a user as a predefined area," and that Vivint acknowledged that point at oral argument. Appx00021 (citing Appx01737 at lines 1-22). The Board then rejected Vivint's belated attempt to fix that problem by adding a further requirement that the user interact with a screen to its claim construction as "improper new argument raised for the first time at the oral hearing." Appx00021-00022 (citing Patent Trial and Appeal Board Consolidated Trial Practice Guide (Nov. 2019) at 85; *Dell Inc. v. Acceleron, LLC*, 884 F.3d 1364, 1369 (Fed. Cir. 2018)). In addition, the Board held that such a construction was, in any event, without merit. Appx00022.

## SUMMARY OF THE ARGUMENT

I.    The Board properly construed "predefined area" to mean an area defined in advance, according to its plain and ordinary meaning. Vivint concedes that "predefined area" is not a technical term of art in the field, and that the specification provides no express, different lexicography definition. Vivint's proposed construction—"a physical area defined by a user configurable region of a camera's field of view having delineated boundaries, where the region within the boundary is a region of interest and any regions not within the boundary are regions of disinterest"—finds no support in the intrinsic record. Vivint's proposed construction is derived from a functionality found in a prior art Ivex system its

expert witness co-developed. The Board properly discounted this extrinsic evidence, since this Ivex system is nowhere mentioned in the patent specification and was not cited during the prosecution history.

II.     Even if this Court were to adopt Vivint's proposed construction of "predefined area," it would not distinguish the Monroe or Jin prior art. At the IPR Hearing, Vivint's counsel effectively conceded that the construction proposed in Vivint's briefing did not, in fact, distinguish the prior art because it did not exclude the camera's field of view, which was exactly what ADT contended met the "predefined area" limitation in Monroe and Jin. To avoid the impact of that concession, Vivint attempted to amend its construction to further require that a user "interacts with a screen." The Board properly held that this new argument was untimely and, even if considered, without merit.

## ARGUMENT

## I.     The Board Properly Construed "Predefined Area"

The Board properly construed "predefined area" according to its plain and ordinary meaning: an area "defined in advance." Nothing in the specification or file history further limits the term. Vivint's proposed construction—"a physical area defined by a user configurable region of a camera's field of view having delineated boundaries, where the region within the boundary is a region of interest

and any regions not within the boundary are regions of disinterest"—finds no support in the record.

### C.    The Plain Meaning of "Predefined" is "Defined in Advance"

The words of a claim "are generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*) (citations omitted). When a claim simply uses "commonly understood" lay terminology, claim construction "involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. "In such circumstances, general purpose dictionaries may be helpful." *Id. See also Wasica Finance GmbH v. Continental Automotive Systems, Inc.*, 853 F.3d 1272, 1282 (Fed. Cir. 2017) (using general dictionary to help define "emittance," where the patent owner did not "urge that any special definition or disavowal applies to the term").

Here, the plain and ordinary meaning of "predefined" is "defined in advance." *See* Appx01502, Webster's Dictionary (online) (defining "predefined" as "defined in advance"); Appx01503-01504, Cambridge English Dictionary (online) (defining "predefined" as "decided, set, or arranged before something is done"). *See also IGT v. Bally Gaming Int'l, Inc.*, 659 F.3d 1109, 1119 (Fed. Cir. 2011) ("We agree that the term 'predefined' has a plain and ordinary meaning….

We agree with the district court, the term 'predefined' means 'defined in advance.'")

Claim language, of course, can sometimes be construed differently than the plain and ordinary meaning found in lay dictionaries. For example, where a term has "a particular meaning in a field of art," then additional technical evidence may be relevant. *Phillips*, 415 F.3d at 1314. *See also Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331-32 (2015). In addition, where a patent specification provides "a special definition…that differs from the meaning it would otherwise possess," then the patentee's lexicography controls. *Phillips*, 415 F.3d at 1316. Neither of those exceptions apply here. Vivint conceded in oral argument before the Board that "predefined area" is not a special term of art in the field. Appx00023-00024, Appx01735 at lines 4-20. Vivint also has not argued that the patentee acted as his own lexicographer, providing a special definition of "predefined area." Nor could it. *See Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998) (lexicography definition must be set forth in the specification with "reasonable clarity, deliberateness, and precision"). With respect to the scope of "predefined area," the specification states only as follows:

> In one embodiment, the camera module 205 may detect, in conjunction with a camera, an entity passing through a perimeter of a predefined area. The predefined area may include a shop, a restaurant, a building, an area of the building, a home, an area of the home, a parking lot, an animal cage, a wilderness area, and the like.

Appx00147 at 5:58-63. In particular, the specification places no limits on *how* the area is predefined. There is simply no basis to depart from the widely accepted plain and ordinary meaning of "predefined," which is "defined in advance." *See Wasica*, 853 F.3d at 1281 ("It is axiomatic that we will not narrow a claim term beyond its plain and ordinary meaning unless there is support for the limitation in the words of the claim, the specification, or the prosecution history.") (citation omitted).

### D. The Board's Construction Does Not Render Claim Language Superfluous

Vivint argues that the phrase "predefined area" cannot be given its plain and ordinary meaning because that would render the language superfluous. This is incorrect. If "entering a predefined area" were eliminated from the claim, the limitation would read as follows:

> detecting an entity […] based at least in part on camera data, wherein the entity includes a human or an animal;

This hypothetical shortened claim would cover detecting an entity using *any* camera data, not just an entity entering a predefined area. For example, it would cover detecting FDR within old newsreel footage, or detecting when Toto is onscreen in the Wizard of Oz. Requiring that the entity be detected when "entering a predefined area" limits the claim to the context of monitoring a predefined area for entrance of an entity.

16

Moreover, as the Board explained, the only claim scope issue which must be resolved here is whether positioning a camera to view a "scene of interest," and then detecting the motion of a person entering the camera's field-of-view, as disclosed in the prior art, satisfies "detecting an entity entering a predefined area based at least in part on camera data." In this context, the user is "predefining" the area to be monitored, further negating Vivint's "superfluousness" argument:

> First, Patent Owner asserts that accepting Petitioner's position that "predefined area" is met by the entire field-of-view of the camera would render the recitation "entering a predefined area" superfluous.… We disagree. Petitioner's implied position is not that "predefined area" must be the entire field-of-view of a camera, but that "predefined area" can be satisfied by the entire field-of-view of the camera so long as a user sets up the entire field-of-view of the camera to correspond to the user's region of interest. Pet. 14. With that meaning of "predefined area," claims 1 and 9 do not cover taking images with the camera without the user matching the camera's entire field-of-view to the user's region of interest. Thus, the term "predefined area," if applied to a camera's entire field-of-view, would require the user to set up the camera such that the camera's entire field-of-view would mark a perimeter that corresponds to the user's region of interest, for example, by zooming in or panning out or by adjusting the direction or angle of view. A camera's entire field-of-view does not automatically or necessarily correspond to the user's region of interest. Consequently, Patent Owner's argument, that construing "predefined area" to cover the entire field-of-view of the camera is superfluous, is unavailing.

Appx00022-00023.

## E.     Vivint's Proposed Construction Is Not Supported by the Record

Vivint argues that "predefined area" should be construed to mean "a physical area defined by a user configurable region of a camera's field of view

having delineated boundaries, where the region within the boundary is a region of interest and any regions not within the boundary are regions of disinterest." This construction seeks to add a limitation—user configurable regions within a camera's field-of-view—found nowhere in the claim language, the specification, or the file history. The origin of this construction is the Declaration of Vivint's second expert, Dr. Kramer, who states that he employed a rectangle-drawing functionality in a prior art system he helped develop, and that one of skill in the art would be familiar with this technology and import it into the definition of "predefined area." Appx01090-01096, Appx01101-01107. The Board properly rejected Vivint's construction as lacking evidentiary support.

### 1. There Is No Intrinsic Support for Vivint's Construction

In its Brief, Vivint cites to three pieces of intrinsic evidence that it claims supports its construction. None of them do.

***First***, Vivint points to a passage in the specification that describes monitoring two separate predefined areas in the context of a parking lot: one to detect a vehicle entering the lot, and a second to detect whether a person exiting the vehicle enters a particular store. Appellant's Br. at 15-20. Citing parking lot claims in the *parent* '990 patent, Vivint argues that these two predefined areas must be covered by a single camera. *Id.* at 16-20. Thus, Vivint contends, a predefined area *must* be a user-selected region within a camera's field of view

because "claim language 'is presumed to have the same meaning throughout all of the claims'" across related patents. (*Id.* at 16-17, citing *Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*, 672 F.3d 1270, 1274–75 (Fed. Cir. 2012).)

This argument is without merit. "Predefined area" does not have a different meaning in the parent patent's claims. In both, the plain and ordinary meaning applies: an area defined in advance. An area can be "defined in advance" by positioning a camera to cover an area of interest *or* by other means, such as selecting an area within a camera's field-of-view. The plain meaning of "predefined area" includes both possibilities. That the parent '990 claims may have *additional limitations* that limit how area can be predefined to satisfy *those* claims does not change the plain meaning of "predefined area." As the Board correctly explained in rejecting Vivint's argument concerning the parent patent's claims:

> Patent Owner's arguments are misplaced and unavailing. The challenged claims in this proceeding do not recite multiple predefined areas. That alone is reason to treat the claims here and the claims in the parent application differently. Assuming the claims in the parent application exclude a predefined area that is the entire field-of-view of the camera by reason of their requiring multiple separate predefined areas, that is no reason to do the same with the challenged claims here, which do not require multiple separate predefined areas. The restriction in the parent application stems from the requirement of multiple predefined areas, not simply from the meaning of "predefined area." Although the specification of the '159 patent discusses an implementation with two predefined areas, "the name of the game is the claim." *In re Hiniker*, 150 F.3d at 1369.

Appx00029.

Indeed, that Vivint had to resort to limitations found in the parent patent as the basis for its construction of the '159 patent claims makes ADT's point for it. The absence of such limitations in the challenged claims confirms that these claims are drafted more broadly than the claims of the parent patent, to include embodiments with just one predefined area. That is consistent with the specification's description of "predefined area" as broadly including "a shop, a restaurant, a building, an area of the building, a home, an area of the home, a parking lot, an animal cage, a wilderness area, and the like," (Appx00147 at 5:58-63), rather than just isolated areas selected within a user screen as Vivint suggests.

***Second***, Vivint points to a pair of passages in the Summary of the Invention section that recite a "computing device" and "computer program" "configured to obscure content on a screen":

> A computing device configured to obscure content on a screen is also described. The device may include a processor and memory in electronic communication with the processor. The memory may store instructions that may be executable by the processor to detect, via a camera, an entity passing through a perimeter of a predefined area and classify, upon detecting the entity passing through the perimeter of the predefined area, a type of the entity from an image of the entity captured by the camera….
>
> \*      \*      \*
>
> A computer-program product to obscure content on a screen is also described. The computer-program product may include a non-transitory computer-readable medium that stores instructions. The instructions may be executable by the processor to detect, via a camera, an entity passing through a perimeter of a predefined area and

classify, upon detecting the entity passing through the perimeter of the predefined area, a type of the entity from an image of the entity captured by the camera….

Appx00145 at 2:24-47. Vivint contends, as it did before the Board, that the use of the word "obscure" "would have suggested the use of something like the Ivex 'region of interest' technology" described in its expert's declaration. Appellant's Br. at 47-48.

The phrase "obscure content on a screen," however, does not appear in the claim language. Nor does it have anything to do with the predefined area, which is described later in the specification. *See* Appx00147 at 5:58-63. Indeed, the phrase "obscure content" seemingly has nothing to do with anything else in the '159 patent at all, which nowhere else mentions "content on a screen." The phrase "A [computing device / computer program] to obscure content on a screen" appears to be part of boilerplate paragraphs used in multiple, unrelated Vivint patents filed around the same time by the same prosecution counsel. For example, U.S. Pat. No. 9,350,673, which concerns a completely unrelated subject matter, recites in its Summary of the Invention the same phrase followed by similar "processor and memory" boilerplate:

A computing device configured to obscure content on a screen is also described. The device may include a processor and memory in electronic communication with the processor. The memory may store instructions that may be executable by the processor to monitor an actual bandwidth available to one or more computing devices in a network….

and

> A computer-program product to obscure content on a screen is also
> described. The computer-program product may include a non-
> transitory computer-readable medium that stores instructions. The
> instructions may be executable by the processor to monitor an actual
> bandwidth available to a node in a mesh network….

Appx01519 at 2:16-37. *See also* U.S. Pat. 9,860,762 at 2:59-3:22 (Appx01543-

01544) (using the same boilerplate "obscure content on a screen" language in

another unrelated Vivint patent, with different inventors, describing unrelated

subject matter). The "obscure content on a screen" phrase, therefore, has nothing to

do with the "predefined area." If the phrase did invoke specific functionality for

delineating a predefined area, why would it be repeated in unrelated Vivint patents?

Regardless, even if the specification did disclose some mechanism for

"obscuring content on a screen" (which it does not), this would not support

Vivint's proposed detailed definition of "predefined area." *See Renishaw*, 158 F.3d

at 1249 (lexicography definition must be set forth with "reasonable clarity,

deliberateness, and precision"). The specification says nothing about what

"content" may be "obscured," and "obscuring content" appears nowhere in the

claims. As the Board explained:

> [T]he cited text in the specification about the computer having
> capability to obscure content on a screen is expressed not in
> association with any definition of a "predefined area," but as a general
> description of the computer. Ex. 1001, 2:24–31, 2:39–47. Even
> assuming that the obscuring feature is used when the predefined area

occupies less area than the full screen, that does not mean the obscuring feature has to be invoked for every predefined area. Further assuming that the obscuring feature has to be invoked for every predefined area, that does not mean the image in the entire field-of-view of the camera cannot reside in the unobscured portion of the screen. Thus, the description identified by Patent Owner does not support a position that an entire field-of-view of a camera cannot be a predefined area.

Appx00027.

In its Opening Brief, Vivint contends that the Board committed two errors in its analysis of the "obscuring" issue, but Vivint's arguments do not actually contradict the Board's reasoning. Vivint first contends the Board erred in concluding that the "obscure" language "is expressed not in association with any definition of a 'predefined area,' but as a general description of the computer." Appellant's Br. at 48. Vivint concedes that the "obscure" phrase is not part of a definition of "predefined area," but argues that "it still provides useful context information about the meaning of 'a predefined area.'" *Id.* at 49. Whatever vague "context" the phrase may provide, however, does not allow importation of Vivint's new limitation.

Vivint next argues that the Board erred in finding that, even assuming the "obscuring" language described an actual feature, it would not preclude the claim from covering an area predefined by the entire field-of-view of a camera. *Id.* at 50. Vivint responds that "it is the fact that obscuring can happen at all that is informative." *Id.* That obscuring "can happen," however, would not be informative

at all. The question is whether the claim *requires* limiting to a "user configurable region," as proposed in Vivint's claim construction. The word "obscuring," whatever it may mean, does not even appear in the claim.

***The third*** and final intrinsic evidence Vivint cites is the specification's reference to a predefined area having a perimeter. Specifically, Vivint points to passages in the specification stating, for example, that the system detects "when a person passes through a predetermined perimeter." Appellant's Br. at 23, citing Appx00146 at 3:44-49. Vivint argues that this "perimeter" must be a user-drawn portion of the field-of-view, or the system may not alert efficiently:

> A camera's field of view may include shops, or homes, or any of the other examples given, in whole or in part, but the system cannot know where the perimeter of each one is unless the system is told. If the perimeter is simply the outer periphery of the field of view itself, then the system will alarm upon sensing any encroachment into the field of view, which tells the system user nothing about whether the perimeter of the shop, home, parking lot, etc., has been breached.

Appellant's Br. at 23. This argument, again, is entirely divorced from the language of the claims and the disclosure of the specification.

First, the claims do not recite a "predetermined perimeter." The meaning of "predetermined perimeter," therefore, is irrelevant to the scope of the claim. *See Superguide Corp. v. DirecTV Enters.*, 358 F.3d 870, 875 (Fed. Cir. 2004) ("a particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment").

Even if the claim did recite a predefined area with a "predetermined perimeter," however, a camera's complete field-of-view *does* provide a predetermined perimeter. All predefined areas have a perimeter as a matter of basic geometry. *See* Appx00027 ("the entire field-of-view of a camera does have a perimeter"). That the system might work better, in certain applications, if a user draws a rectangle within the field-of-view does not impact the scope of the claim. As the Board stated, "[t]he law does not require a claim term to read on only the most useful, most adaptable, or most advanced implementation." Appx00028. *See also Thorner v. Sony Computer Entertainment America LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012) ("even where a particular structure makes it 'particularly difficult' to obtain certain benefits of the claimed invention, this does not rise to the level of disavowal of the structure") (citing *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1315 (Fed. Cir. 2010)).

The intrinsic record, therefore, does not support—let alone compel—Vivint's proposed construction of "predefined area." The Board did not err in construing the term according to its plain and ordinary meaning.

### 2. The Board Properly Discounted Vivint's Extrinsic Evidence

Vivint spends more than 10 pages of its Brief discussing a prior art system that its expert witness, Dr. Kramer, helped develop for Ivex Corporation. According to Dr. Kramer, the Ivex system included functionality that allowed a

user to draw rectangles within a camera's field of view to limit which regions triggered an alarm. Vivint and Dr. Kramer argue that this "regions of interest" technology was superior to using a camera's entire field-of-view, because it reduced unwanted alarms and saved costs. Appellant's Br. at 25-36. None of this has any bearing on the meaning of "predefined area" in the '159 patent, and the Board properly discounted this extrinsic evidence. Appx00024-00026.

It is axiomatic that extrinsic evidence cannot trump the intrinsic record or supply limitations not present in the plain language of the claim. *See, e.g.*, *Phillips*, 415 F.3d at 1317-19 (expert testimony is less reliable than the intrinsic record, and cannot change the meaning of claims). Neither the Ivex system nor its rectangle-drawing functionality is described anywhere in the '159 patent's specification, nor was it cited during prosecution. Moreover, the Ivex Manual nowhere uses the words "predefined area."

At best, the Ivex evidence shows one example of how an area *may* be predefined for alerts. It is a great leap to then suggest that this additional functionality described in (an uncited) prior art system is *required* by the '159 patent claims. If the inventor of the '159 patent desired to limit his claims to a predefined area created by a user drawing rectangles, he could have described this functionality in the specification and included the limitation in the claims. He did not. Or he could have acted as his own lexicographer and defined "predefined

area" as having the construction Vivint now seeks. Again, he did not. Nothing in the specification or the claims excludes predefining an area by positioning a camera to cover an area of interest.

Dr. Kramer's testimony that Ivex's "region of interest" rectangle-drawing functionality is superior to using a camera's entire field-of-view is similarly irrelevant. As the Board stated, "[t]he law does not require a claim term to read on only the most useful, most adaptable, or most advanced implementation." Appx00028. *See also Nobel Biocare Sers. AG v. Instradent USA, Inc.*, 903 F.3d 1365, 1381-82 (Fed. Cir. 2018) (PTAB correctly rejected patent owner's proposed narrow construction based on its expert's testimony of "functional considerations").

For the above reasons, the Board properly concluded that the Ivex system has no bearing on the meaning of "predefined area" in the '159 patent:

> The Ivex Manual, however, is not the specification of the '159 patent. Nor are the Ivex System and the Ivex Manual mentioned in the specification of the '159 patent. Further, the Ivex Manual does not use the term "predefined area," and also does not indicate a user cannot draw a region of interest around the entire field of view of the camera. …Even assuming that the Ivex System and the Ivex Manual precludes marking the entire field-of-view of the camera as a region of interest, which they do not, that does not mean a different system within the scope of claims 1 and 9 must have the same exclusion. Accordingly, Patent Owner has not shown the Ivex System and the Ivex Manual support a position that the term "predefined area" recited in each of claims 1 and 9 cannot be read as covering the entire field-of-view of a camera.

Appx00026. This determination—that Vivint's extrinsic evidence does not support its proposed construction—is supported by substantial evidence and entitled to deference. *See In re Cuozzo Speed Technologies, LLC*, 793 F.3d 1268, 1280 (Fed. Cir. 2015) (in reviewing a PTAB claim construction, "[w]e review underlying factual determinations concerning extrinsic evidence for substantial evidence").

Vivint's attempt to rewrite the claim with extrinsic evidence should be rejected, and the Board's construction of "predefined area" affirmed.

## II. Vivint's Construction of "Predefined Area" Fails to Distinguish the Prior Art

In its IPR Response Brief, Vivint's proposed construction of "predefined area" was "a physical area defined by a user configurable region of a camera's field of view having delineated boundaries, where the region within the boundary is a region of interest and any regions not within the boundary are regions of disinterest." Appx01003. At the IPR Hearing, the Board asked Vivint's counsel whether its construction in fact precluded a camera's entire field-of-view from being a "predefined area." Vivint's counsel answered that it did not:

> JUDGE LEE: I'm looking at your definition with the definition for predefined area. And it seems to me even that does not exclude the entire field of view of a camera. Can you explain? Why even there you're not being specific.
>
> MR. FREEMAN: Well, it's intended to identify the -- well, let me answer your question this way. I think what you're probably getting at is, can you select an entire region of the field of view as your predefined area? Can you do that? Yes, you can do that. But

28

that's using region of interest technology. You've made – you've identified a physical piece on the planet that you are interested in. And you've interacted with a screen to put down virtual boundaries, physical area, virtual boundaries. That's what this predefined area is really talking about. That's the only thing it could be talking about given the disclosures that we've just gone through.

JUDGE LEE: So you don't -- you agree with me, that your proposed definition does not exclude the entire field of view of the camera from being configured as your region of interest?

MR. FREEMAN: It does not exclude the entire field of view from being configured by the user as the region of interest.

Appx01737. Vivint maintains that position in this appeal. Appellant's Br. at 8.

With this concession, Vivint's proposed construction does not, in fact, distinguish the Monroe or Jin prior art. As the Board explains in its Final Written Decision, Monroe discloses positioning a camera to view a "scene of interest":

Petitioner cites to Monroe's Summary of the Invention (Ex. 1005 ¶ 25), which describes that Monroe's camera is configured to view "a scene of interest." Pet. 14. Petitioner also cites to paragraph 157 of Monroe, which describes various cameras "view scenes of interest." *Id.* We find that from such disclosures one with ordinary skill in the art reasonably would have inferred that *the user configures a camera so that the field of view of the camera matches a field of interest of the user.* Consequently, Monroe discloses a "predefined area" for monitoring.

Appx00037 (emphasis added). Similarly, the Board found that Jin discloses positioning a camera to cover an "area under surveillance":

As in the case of Monroe, Petitioner regards Jin's area under surveillance in the field of view as the predefined area. Patent Owner misses Petitioner's point, a valid one, that *the camera's field of view, when the camera is put in place to monitor an "area under surveillance," constitutes a predefined area.* If someone enters the

camera's field of view, he or she has entered the predefined area. We
see nothing wrong with that approach.

Appx00064 (emphasis added). Thus, even under Vivint's proposed construction,

Monroe and Jin each discloses "a physical area defined by a user configurable

region of a camera's field of view having delineated boundaries, where the region

within the boundary is a region of interest and any regions not within the boundary

are regions of disinterest." If the "configurable region" can coincide the entire field

of view, as Vivint contends, (Appx01737; Apellants Br. at 8), then positioning the

camera to cover a scene of interest, which the Board found is done in both Monroe

and Jin, satisfies this language.

At the Hearing, Vivint attempted to overcome this problem by modifying its

claim construction position to also require that a user "interact with a screen":

> JUDGE LEE: But you don't deny that the entire field of view
> can be the predefined area.
> MR. FREEMAN: I don't deny that. But I do hold that you have
> to interact with the screen. You have to interact with the screen. So in
> the example on the screen right now, slide number 12 [Appx01693], if
> you wanted that whole blue box to be -- if you wanted the whole
> predefined area to be the entirety of the screen, you take that blue box.
> You get rid of the red and green and make the blue box coextensive.
> And then you have practiced the invention because you used the box
> to interact with the screen and select your predefined area. Under
> Petitioner's construction, there's no boxes. There's no use of
> checkerboard ability. It's just point the camera and call the field of
> view predefined even though there's no definition going on.
> JUDGE LEE: Thank you. I think we understand now.

Appx01742. In its Final Written Decision, the Board properly held that this new claim construction position was untimely, and need not be considered:

> We find that this argument alleging the claim requires user interaction with the screen to configure a predefined area was not presented and developed in the Patent Owner Response, but rather is an improper new argument raised for the first time at the oral hearing. "During an oral hearing, a party may rely upon appropriate demonstrative exhibits as well as evidence that has been previously submitted in the proceeding, but may only present arguments relied upon in the papers previously submitted." Patent Trial and Appeal Board Consolidated Trial Practice Guide (Nov. 2019) ("Consolidated Practice Guide") at 85; *see also Dell Inc. v. Acceleron, LLC*, 884 F.3d 1364, 1369 (Fed. Cir. 2018) (holding that the Board is obligated under its own regulations to dismiss untimely argument "raised for the first time during oral argument"). Patent Owner's new argument is not entitled to consideration and we decline to consider it.

Appx00021-00022.[2] This determination alone is sufficient to resolve this case. Vivint does not appeal the Board's factual findings with respect to the prior art—it only appeals the claim construction of "predefined area." If, as the Board found, Vivint's claim construction proposed in its briefing was sufficiently broad as to include the user positioning the camera as establishing the "predefined area," it does not distinguish Monroe or Jin, and no further findings are needed.

In its Appeal Brief, Vivint argues that the Board abused its discretion when it refused to consider Vivint's "user interaction with a screen" argument.

---

[2] The Board went on to hold: "Alternatively, even if we do consider this belated argument, it is without merit because neither independent claim 1 and claim 9 nor Patent Owner's proposed construction of 'predefined area' say anything about user

Appellant's Br. at 36-41. Vivint contends that this was not a new argument, but "nothing more than clarification of its previously stated position," citing *Chamberlain Grp., Inc. v. One World Techs., Inc.*, 944 F.3d 919 (Fed. Cir. 2019). Appellant's Br. at 40. In support, Vivint cites statements by ADT which, Vivint contends, indicate that ADT understood Vivint to be arguing that the claim required a "user selected" region of a camera's field-of-view. *Id.* at 38-39. Indeed, ADT *had* understood Vivint to be arguing that a user must select a subset of the camera's field of view, and that the complete field-of-view could not be a "predefined area." The Board had understood the same. *See* Appx00021 ("That answer [that the entire field-of-view can be a predefined area] is not consistent with and contradicts the arguments on pages 8–22 of the Patent Owner Response."). But Vivint's counsel indeed stated that position—that the predefined area can be the entire field-of-view—and Vivint maintains that position in this appeal.

The *new* position Vivint advanced at the Hearing was the claim required "user *interaction with a screen*." In other words, Vivint stated that it was not arguing that "predefined area" required selecting a subset of a camera's field-of-view, as it appeared to argue in IPR briefing, but was instead arguing that "predefined area" required user "*interaction with a screen*." This was a new claim construction position and a new basis for distinguishing Monroe and Jin.

---

interaction with the camera screen to define, set up, or configure a predefined

Thus, this case is distinguishable from *Chamberlain*, the case relied upon by Vivint. In *Chamberlain*, the patent owner "did not introduce new evidence at the oral hearing; it merely pointed to different portions of the claim language to clarify its claim construction position," in response to arguments in the Petitioner's Reply. 944 F.3d at 925. Here, Vivint was presenting a modified claim construction position that added the requirement of "user interaction with a screen," language it had not argued in any briefing, including its sur-reply. A modified claim construction is plainly a new argument, which cannot be raised for the first time at the oral hearing. *See Driessen v. Best Buy Co., Inc.*, No. 2022-1907, 2023 WL 2422441, at *2 (Fed. Cir. Mar. 9, 2023) ("Because Mr. Driessen did not timely raise his NFT-based claim construction argument to the Board [prior to the oral hearing], the argument was forfeited, and the Board did not abuse its discretion in refusing to consider this argument."); *Dell*, 884 F.3d at 1369. The Board therefore did not abuse its discretion in determining that Vivint's "user interaction with a screen" claim construction was new and untimely. Without that untimely modification, Vivint's claim construction of "predefined area" fails to distinguish the prior art for the reasons discussed above.

---

area." Appx00022.

## <u>CONCLUSION</u>

For the above reasons, the Board's Final Written Decision cancelling the challenged claims should be affirmed.

Respectfully submitted,

_/s/ David A. Simons_

David A. Simons
Bryan P. Collins
Pɪʟʟsʙᴜʀʏ Wɪɴᴛʜʀᴏᴘ Sʜᴀᴡ Pɪᴛᴛᴍᴀ
1650 Tysons Boulevard
McLean, Virginia 22102
Telephone: 703.770.7579
Facsimile: 703.770.7901
david.simons@pillsburylaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2023, true and correct copies of the foregoing **BRIEF OF APPELLEE ADT, LLC** was electronically filed through the Court's ECF system. All participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ *David A. Simons*
David A. Simons

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief uses a proportionately spaced 14-point typeface, and, based on the word count function of Microsoft Word, contains 8342 words, excluding the Table of Contents, Table of Authorities, Certificate of Interest, and Statement of Related Cases, and therefore complies with the length restrictions of Federal Rule of Appellate Procedure 28.1(e)(2)(B)(i) and Federal Circuit Rule 28.1(e).

Dated: November 6, 2023

/s/ *David A. Simons*
David A. Simons